```
          IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:              )
                               )
CAROL ANN MCKAIN,              )   CASE NO. BK04-40758
                               )
            Debtor(s).   )         CH. 7
```

MEMORANDUM

    Trial was held in North Platte, Nebraska, on April 15, 2005, on the debtor's motion for turnover (Fil. #15) and response by the Chapter 7 trustee (Fil. #29), and on the trustee's objections to exemption (Fils. #28 and 31) and resistance by the debtor (Fil. #30). Bert Blackwell appeared for the debtor, and Philip Kelly appeared as the Chapter 7 Trustee. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (B) and (E).

    These contested matters arise from the debtor's failure to list certain assets in her bankruptcy schedules, or to properly amend the schedules after she became aware of the unlisted property. The problem appears to be the result of a mistake or miscommunication, rather than fraudulent intent. The situation, however, is important for debtors and their attorneys to be aware of, as slightly different facts could cause a significantly different outcome.

    At the outset, it should be made clear that Mr. Blackwell did not represent the debtor at the time of the events that led to this trial. He became involved in the case about three months after it was filed.

    The problem stems from an intentional delay between the time the debtor provided her schedule information to her attorney and the time the petition and schedules were filed. This eight-month delay was a result of the debtor's counsel's desire to resolve certain child custody and child support issues before filing the bankruptcy case. However, the bankruptcy schedules were prepared and filed without updating the information originally provided by the debtor.

In the period between submitting information for the schedules in July 2003 and the bankruptcy petition and schedules actually being filed in March 2004, the debtor received child support payments and state and federal income tax refunds, and created a lien on her car. Upon the advice of her attorney, she held onto the child support and tax refund checks until her § 341 meeting, when the trustee requested them and she turned them over to him.

The matter is before the court for several reasons. First, the debtor seeks to have the funds represented by the child support checks – approximately $5,800 – returned to her. The parties dispute whether or not those funds are property of the bankruptcy estate and subject to administration by the trustee, and the trustee further asserts that the debtor waived her right to request turnover by delivering the funds to the trustee in the first place. Second, the trustee objects to the debtor's attempt to exempt the income tax refunds, the child support payments, and any other assets not listed in the bankruptcy schedules.[1] Lastly, the parties bring before the court the larger issues of what standard of care debtors and their attorneys should be held to and the extent to which a trustee may reasonably rely on and act on information provided in bankruptcy schedules.

## I. Waiver

The trustee argues that the debtor waived her rights to claim the tax refunds and the child support as exempt because she voluntarily turned those checks over to him. Generally, a waiver requires the intentional relinquishment of a known right. In re Brown, 234 B.R. 907, 914 (Bankr. W.D. Mo. 1999). There is no evidence here that the debtor contemplated giving up her legal rights to the funds by turning over the checks as she was directed to do, so I cannot find that she waived her exemption rights in that property.

## II. Child support

The debtor and her former husband divorced in 1996 in Wyoming, and the Wyoming court entered an order regarding

---

[1] The trustee originally objected specifically to exemption of an IRA, but stated on the record at trial that he was no longer contesting that exemption.

payment of child support by the former husband. In 2001, the debtor applied to the State of Nebraska for child support enforcement services. She requested registration of the Wyoming order and modification of that order. A Nebraska case was then opened. By that time, both the debtor and her former spouse had moved to North Platte, Nebraska, where they currently reside. In 2002, a Nebraska court entered an order directing the Nebraska child support payment center to adjust its records and post payments received to the Nebraska case number rather than the Wyoming case number. In January 2004 – prior to the bankruptcy petition filing date – the debtor's former husband paid in full the accumulated balance of child support due. Those are the funds at issue here. In March 2004, the Nebraska court entered an order transferring custody of the sole minor child to Mr. McKain and directing the debtor to pay child support.

The trustee asserts that the child support proceeds are property of the bankruptcy estate, on the basis that child support is not held in trust for the minor child by the custodial parent but is actually owed to the parent to be used as the parent deems appropriate. The two checks, paid through the State of Nebraska's child support enforcement office, totaled $5,870.45. That represents the total delinquent child support owed by the debtor's former husband. An arrearage of nearly $7,500 was listed as an asset on debtor's Schedule B.

The debtor asserts that Wyoming law should be followed, as the law of the jurisdiction issuing the court order. In Wyoming, "unpaid child support is not an asset of the parent but is the children's money which the parent administers in trust for the children's benefit." Hurlbut v. Scarbrough, 957 P.2d 839, 842 (Wyo. 1998) (citing Cranston v. Cranston, 879 P.2d 345, 349 (Wyo. 1994)).

The Nebraska legislature has adopted the Uniform Interstate Family Support Act ("UIFSA" or "the Act"), Neb. Rev. Stat. §§ 42-701 to -751 (Lexis Cum. Supp. 2004).[2] Among other issues of interstate child support, the Act and its interpreting cases address choice of law. In general, when an out-of-state child-support order is registered for enforcement in Nebraska, the issuing state's law governs the "nature, extent, amount, and

---

[2] For purposes of this discussion in the terms of the UIFSA, Wyoming is the "issuing state," and Nebraska is the "responding state."

duration of current payments under a registered support order," as well as the computation and payment of arrearages and accrual of interest. Neb. Rev. Stat. § 42-739(a).

However, if both of the parents reside in this state and the child no longer lives in the issuing state, then Nebraska courts have the jurisdiction to enforce and modify the issuing state's order using Nebraska procedural and substantive law. Neb. Rev. Stat. § 42-747.01. This is because enforcement and modification of a child-support order when all parties reside in one state is not a matter of interstate concern. See Unif. Interstate Family Support Act § 613, cmt., 9 (Part 1B) U.L.A. 454 (Thompson West 2005). Likewise, the Nebraska Supreme Court has made a similar observation in the case of Groseth v. Groseth, 257 Neb. 525, 600 N.W.2d 159 (1999), where the court determined that Nebraska substantive law should apply to the modification of a child-support order issued in Massachusetts when the parties no longer had a connection to Massachusetts, as the mother and children lived in Nebraska and the father lived in Texas:

> We see no persuasive reason why the law of an original issuing state should play a role in deciding the amount of a child support obligation when neither party continues to raise children or earn an income there. It is more sensible to apply the law of the state where at least one party is earning income or raising the children because that substantive law more accurately takes into account the cost of living and factors of raising children in that locale.

257 Neb. at 538, 600 N.W.2d at 169.

Pursuant to Nebraska statute, child support paid to the party having custody of a minor child "shall be the property of such party" unless it has been assigned to the Department of Health & Human Services. Neb. Rev. Stat. § 42-364(6) (Lexis 2004). Court-ordered child-support payments become vested in the payee as they accrue. Gordon v. Gordon, 231 Neb. 857, 861-62, 438 N.W.2d 762, 764-65 (1989) (citing Wassung v. Wassung, 136 Neb. 440, 443, 286 N.W. 340, 342 (1939)).

It therefore appears that the $5,870.45 in child-support proceeds is property of the estate to be administered by the trustee.

### III.  Tax refunds

After the bankruptcy petition was filed, the debtor received a refund of federal taxes paid in 2003 of $3,882.13, and a refund of state taxes for the same tax year of $154.30. The debtor listed these refunds on her amended Schedule B, and claimed them as exempt on her amended Schedule C. Upon the advice of her attorney, she held the checks until her § 341 meeting and turned them over to the trustee at that time. The trustee now requests that the proceeds of those checks be considered non-exempt property of the estate simply because the debtor failed to list them in her schedules until directed to do so by the trustee.

There is no question here that the refunds are property of the bankruptcy estate. The majority of courts have determined that tax refunds are property of the estate because they plainly fall under the 11 U.S.C. § 541(a)(1) definition of "all legal or equitable interests of the debtor in property as of the commencement of the case." See, e.g., Wallerstedt v. Sosne (In re Wallerstedt), 930 F.2d 630 (8th Cir. 1991); Barowsky v. Serelson (In re Barowsky), 946 F.2d 1516 (10th Cir. 1991); Doan v. Hudgins (In re Doan), 672 F.2d 831 (11th Cir. 1982); Kleinfeldt v. Russell (In re Kleinfeldt), 287 B.R. 291 (B.A.P. 10th Cir. 2002); In re WDH Howell, L.L.C., 294 B.R. 613 (Bankr. D.N.J. 2003); In re Webb, 234 B.R. 96 (Bankr. W.D. Mo. 1999); Riske v. Oliver (In re Oliver), 172 B.R. 924 (Bankr. E.D. Mo. 1994). Property of the estate includes contingent interests in future payments. Potter v. Drewes (In re Potter), 228 B.R. 422 (B.A.P. 8th Cir. 1999); In re Yonikus, 996 F.2d 866 (7th Cir. 1993); Barfknecht v. Hennepin County Dept. of Welfare (In re Barfknecht), 15 B.R. 463 (Bankr. D. Minn. 1981).

The issue here is whether the debtor may properly claim the refunds as exempt. Federal Rule of Bankruptcy Procedure 1009 permits a debtor to amend schedules any time before the case is closed. Therefore, the debtor here has the right to amend her schedule of property claimed as exempt at any time during the pendency of the case. However, simply claiming property as exempt does not make it so. The Eighth Circuit's Bankruptcy Appellate Panel, in particular, has made clear in recent cases that amended claims of exemption need not be allowed. Ladd v. Ries (In re Ladd), 319 B.R. 599, 603 (B.A.P. 8th Cir. 2005); Ardrey v. Blackwell (In re Ardrey), 316 B.R. 531, 533-34 (B.A.P. 8th Cir. 2004); Bauer v. Iannacone (In re Bauer), 298 B.R. 353, 356 (B.A.P. 8th Cir. 2003).

While the general rule is to liberally allow amendment of exemption claims, that freedom is tempered by bad faith on the part of the debtor or prejudice to creditors. Kaelin v. Bassett (In re Kaelin), 308 F.3d 885, 889 (8th Cir. 2002). Neither of those exceptions have been alleged or established in this case. In Ardrey, the appellate panel observed that an amended exemption necessarily would always be prejudicial to creditors because it would deprive them of assets which would otherwise be available for distribution, so something more – a greater prejudice – had to be proved to warrant disallowing an amended exemption. 316 B.R. at 534.

There has been no showing of bad faith or creditor prejudice in this instance. The trustee's frustration at the failure to provide complete and reliable information is understandable, but does not warrant disallowance of the exemption in the tax refunds.

### IV. Other undisclosed assets and liabilities

There is evidence that other asset and liability information was, perhaps inadvertently, left off the bankruptcy schedules and statement of financial affairs. In particular, the trustee questions a security interest the debtor created in January 2004 in her car, and a pending personal injury lawsuit brought by the debtor which is an asset of the estate. The debtor testified that she made her attorney aware of both of those items and relied on him to properly include them in the bankruptcy schedules. These are additional examples of the "reckless disregard" complained of by the trustee in the preparation of the bankruptcy paperwork. Reckless indifference to whether a statement is true or false is equivalent to an intent to deceive. See Jordan v. Bren (In re Bren), 303 B.R. 610, 614 (B.A.P. 8th Cir. 2004) and cases cited therein.

The evidence in this case does not lead me to the conclusion that the debtor was recklessly indifferent to the veracity of the statements contained in her schedules. She testified that her information was accurate when she supplied it to her counsel, and that she notified her counsel of subsequent changes. She also testified that she relied on her counsel to take the steps necessary to get the appropriate documents on file and to notify the trustee and the court. This case is distinguishable from Bren on that basis. In contrast to the debtor in Bren who conceded adopting a "casual" approach to preparation and review of the schedules before he signed them,

Ms. McKain testified that although she gave her schedules a "cursory review" when she signed them, she asked questions of her attorney regarding how to account for the information that had changed. On the facts of this case, I cannot find that the debtor should be punished for the incompleteness and inaccuracies in the schedules and statement of financial affairs.

### V. Accuracy of schedules

It should be noted at the outset that no allegations of fraudulent intent have been made in this case. Much of the caselaw concerning accuracy of debtors' schedules arises in the context of 11 U.S.C. § 727(a)(4), which requires the denial of a discharge when the debtor knowingly and fraudulently has made a false oath or account or has withheld from an officer of the court information relating to the debtor's property or financial affairs.

Nevertheless, all debtors are under a duty to provide complete and accurate information to the trustee. "Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt." Diorio v. Kreisler-Borg Construction Co., 407 F.2d 1330, 1331 (2d Cir. 1969) (quoted in Jordan v. Bren (In re Bren), 2005 WL 176232, at *4 (8th Cir. Jan. 27, 2005) (Smith, J., dissenting)).

> The Bankruptcy Code is designed to ensure that deserving debtors receive a "fresh start" by requiring them to provide complete, accurate, and reliable information at the commencement of the case, so that all parties may adequately evaluate the case and the estate's property may be appropriately administered. "Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir.1987).

Bren, 303 B.R. at 614, aff'd in part, 2005 WL 176232 (8th Cir. Jan. 27, 2005).

> Debtors must make full and complete disclosures on their bankruptcy schedules, and it is not up to a debtor to decide upon the relevance or value of assets or information before including it on his or her

-7-

>schedules. This requirement enables the trustee and creditors to rely on the information supplied by the debtors.

Rutland v. Petersen (In re Petersen), 323 B.R. 512, 517 (Bankr. N.D. Fla. 2005) (internal citations omitted).

Likewise,

>The Debtor is not to decide for himself the nature of his interest in property, the value of that property or the amount of his equity therein. Also, he is not to decide for himself which questions on the Statement of Affairs should be answered fully, completely and truthfully. The Debtor cannot omit information required of him simply because he believes or decides the property omitted has no value or the information is not necessary. This is for the creditors and the Court to decide.

Morrel, West & Saffa, Inc. v. Riley (In re Riley), 128 B.R. 567, 569 (Bankr. N.D. Okla. 1991).

Clearly, the debtor is ultimately responsible for the veracity of the information contained in her bankruptcy schedules. Bren, 303 B.R. 610; Kaler v. McLaren (In re McLaren), 236 B.R. 882 (Bankr. D.N.D. 1999). A debtor's attorney also bears a significant degree of responsibility in assuring to the best of his or her ability that the schedules are complete and accurate before they are filed. See 4 Collier on Bankruptcy ¶ 521.03[3] (15th ed. rev. 2005):

>The provisions of [§ 521](1) are imperative and relate to one of the most important duties of the debtor's attorney, preparing the debtor's schedules and statement of affairs.
>
>* * *
>
>In the preparation of the schedules nothing should be taken for granted. The attorney should carefully investigate the affairs of the debtor and make certain that the attorney has all the information needed to prepare full and complete schedules, for it is the duty of the debtor to present intelligible and true schedules. Although, depending on the sophistication of the debtor, it may be possible to have the debtor, especially a business debtor, prepare a first draft of

the schedules, the attorney for the debtor has a responsibility to review those schedules to ensure that they are complete and in compliance with the Code and the Federal Rules of Bankruptcy Procedure.

The Oregon bankruptcy court quoted the preceding section of Collier in United States Trustee v. Lynn (In re Bellows-Fairchild), 322 B.R. 675 (Bankr. D. Or. 2005), in describing how counsel fell "woefully short" of his duty by failing to include accurate information in the schedules and statement of financial affairs. Counsel also had the debtors sign the documents before they were completed. Counsel testified that he believed certain assets were exempt and therefore did not need to be disclosed in the schedules. The court succinctly disabused him of that notion, observing that the purpose of the schedules and statement of affairs is to furnish the trustee and the creditors with detailed information about the debtor's financial condition without the time and expense of having to conduct a detailed examination to obtain that information. "This requires *full* disclosure of the precise nature of all of a debtor's assets and liabilities. Neither a debtor nor his attorney is entitled to omit information or provide partial information simply because, in their view, the information provided is sufficient to allow the trustee to determine the value of a debtor's estate." 322 B.R. at 681 (emphasis in original).

The debtor and the attorney who filed her case both testified that she made him aware of the child support and tax refund checks after she received them. She testified that she relied on her attorney to update or amend the schedules if necessary. Her attorney filed amended schedules, but those did not accurately reflect her assets, either.

The debtor's attorney testified that he filed the petition quickly on the morning of March 4th when it became clear that the child-support matter could not be settled. He directed the debtor to go to his office to review and sign the schedules. She did so on March 18th, and they were filed that day, although they were dated as of March 4th.

> Although it is undisputed that Barger's attorney failed to list Barger's discrimination suit on the schedule of assets despite the fact that Barger specifically told him about the suit, the attorney's omission is no panacea. As the Supreme Court stated in Link v. Wabash R.R. Co., 370 U.S. 626, 633-34, 82 S.

-9-

Ct. 1386, 1386, 8 L. Ed. 2d 734 (1962), "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." Link v. Wabash R.R. Co., 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1386, 8 L. Ed. 2d 734 (1962). "[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant." Id. at 634 n.10, 82 S. Ct. 1386 n.10 (citations omitted).

Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1295 (11th Cir. 2003) (cited in Estel v. Bigelow Mgmt., Inc., 323 B.R. 918, 923-24 (E.D. Tex. 2005)).

    The trustee is also concerned about the debtor's affirmative response to his standard § 341 meeting question of "do the schedules that you've filed accurately set out a complete list of all your debts and all your assets, to the best of your knowledge?" He is correct that debtors should not simply or automatically answer "yes" to that question, particularly when they are aware that the schedules are not accurate or that circumstances have changed since the schedules were filled out. Ideally, the trustee should not have to ferret out the necessary information. He should be able to reasonably rely on the documents provided when reviewing the case, and debtors and their counsel should be keenly aware of their duty in that regard.

    I am cognizant that, in general, attorneys are busy and have many matters competing for their attention, and that debtor's counsel in this case filed this petition sooner perhaps than he had anticipated. Nevertheless, they have to conduct their business in light of the standards set out above or the bankruptcy system will quickly become unworkable. Both the debtor and her attorney share the responsibility for the current situation. They each had a duty to make sure the schedules and statement of financial affairs were correct, and they each

dropped the ball. This issue takes on even greater significance in light of the Bankruptcy Abuse Prevention & Consumer Protection Act of 2005, most of which takes effect in October 2005. Under the provisions of the new law, counsel's signature on a petition constitutes a certification that the attorney has no knowledge, after an inquiry, that the information in the schedules filed with the petition is incorrect. 11 U.S.C. § 707(b)(4)(D). Attorneys may be subject to assessment of a civil penalty for signing a document without conducting a reasonable inquiry into the underlying facts. § 707(b)(4)(B).

## VI.  Conclusion

The child support proceeds are property of the bankruptcy estate and subject to administration by the trustee. The income tax refunds are exempt and should be returned to the debtor. The debtor's actions here do not constitute reckless disregard for the truth and accuracy of the schedules filed in her case. Those who file bankruptcy petitions and schedules for debtors are reminded of their duty to ensure that accurate, complete, and reliable information is contained in those documents and is promptly provided to the case trustee if changes occur after filing.

A separate order will be entered.

DATED:    June 23, 2005

BY THE COURT:

/s/  Timothy  J.  Mahoney

Chief Judge

Notice given by the Court to:
    *Bert Blackwell
    *Philip Kelly
    United States Trustee

Movant (*) is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.